O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE CASTILLO,<br><br>          Plaintiff,<br>   v.<br>COUNTY OF LOS ANGELES and DOES 1–10, inclusive,<br><br>          Defendants. | Case No. 2:12-cv-02760-ODW(JEMx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO FILE A FIRST AMENDED COMPLAINT [36]** |

Plaintiff Rene Castillo moves for leave to file a First Amended Complaint. (ECF No. 36.) Castillo contends a packet of documents sent from the state dependency court suddenly revealed the identities of the individuals he now wishes to name as defendants. But the evidence adduced establishes that Castillo was already aware of these people prior to the Court's amendment cut-off date. The Court therefore **DENIES** his Motion.

## I.    FACTUAL BACKGROUND

On September 14, 2011, Jose Covarrubias, the father of minor "M," allegedly caused M to falsely accuse Castillo of sexually abusing M. (Compl. ¶ 9.) M's mother, Fabiola Margarita Gutierrez, is Castillo's girlfriend. (*Id.*) The Los Angeles County Department of Children and Family Services ("DCFS") apparently investigated the report and determined that the allegation was "inconclusive." (*Id.* at ¶ 13.) DCFS subsequently closed the case. (*Id.*)

1    On November 15, 2011, DCFS informed Castillo that his name would be included in the Child Abuse Central Index ("CACI"), a database maintained by the United States Department of Justice. (*Id.*) But on January 8, 2012, due to a change in the law, DCFS sent Castillo's attorney another letter indicating that Castillo's name would no longer be included in CACI. (*Id.* at ¶ 16.)

Castillo nonetheless alleges that he has been unable to have his named removed from California's statewide database, the Child Welfare System/Case Management System. (*Id.* at ¶¶ 16–18.)

Castillo filed this Complaint on March 29, 2012, against the County of Los Angeles alleging a cause of action under 42 U.S.C. § 1983 and a claim for injunctive relief. The County answered on April 19, 2012. (ECF No. 11.) Castillo filed a petition for a writ of mandate around the same time in Los Angeles County Superior Court. (*See* Weissburg Decl. ¶ 2.)

After filing a request with the Los Angeles County Dependency Court on May 23, 2012, Castillo received a court order on August 7, 2012, allowing him to use records from the child-abuse investigation in his civil actions. (*Id.* at ¶ 6.) Castillo received a 50-page packet of allegedly "heavily redacted" documents from the court on August 10, 2012. (*Id.* at ¶ 7.)

On July 31, 2012, this Court issued a Scheduling and Case Management Order in this matter. (ECF No. 18.) Among other things, the Order set the last day to amend the pleadings for October 29, 2012. (*Id.* at 4–5.)

On September 15, 2012, Castillo's counsel, Diane Weissburg, noticed the depositions of Mathews, Macias, and Rodriguez-Vasquez. (Ellyatt Decl. Ex. E–G.) The County moved in state court for a protective order precluding these depositions, apparently arguing that the employees' testimony was irrelevant, would elicit

/ / /

/ / /

/ / /

1  information protected by California Welfare and Institutions Code section 827,[1] and
2  would invade M's privacy. (*See* Weissburg Feb. 6, 2013 Decl. ¶ 13.)

3  In mid-October 2012, Weissburg submitted a declaration along with her
4  opposition to the County's motion for a protective order filed in the Superior Court
5  writ-of-mandate action. (Ellyatt Decl. ¶ 2.) Attached to that Opposition were several
6  exhibits containing documents supposedly produced by the dependency court in
7  August 2012 and in response to subpoenas issued to the Burbank Police Department
8  and Presbyterian Intercommunity Hospital. (*Id.*)

9  The dependency court sent Weissburg another 61-page packet of documents on
10 December 27, 2012. (Weissburg Decl. ¶ 8.) Weissburg contends that she did not
11 receive "most" of those documents in the August 10 delivery, and any duplicates that
12 were received were not redacted this time. (*Id.* at ¶ 9.)

13 After reviewing the second set of documents, Weissburg sent the County's
14 attorney a request for a joint stipulation allowing Castillo to file a First Amended
15 Complaint in light of the "newly discovered" evidence. (*Id.* at ¶ 11.) Weissburg
16 claims the new documents allowed her to identify "key employees" involved with
17 DCFS's investigation of Castillo—Macias, Rodriguez-Vasquez, and Mathews—
18 identities of which she claims she was ignorant prior to December 27, 2012. (*Id.* at
19 ¶ 3.) The County declined the stipulation. (*Id.* at ¶ 11.)

20 Armed with this second packet, Castillo filed this Motion to File a First
21 Amended Complaint Based on Newly Discovered Evidence on January 11, 2013.
22 (ECF No. 36.) He seeks to name DCFS social workers Latonya Mathews, Gesenia
23 Macias, and Gloria Rodriguez-Vasquez as Does 1, 2, and 3. (Weissburg Decl. ¶ 3.)
24 The Proposed First Amended Complaint also reflects DCFS as a new party, though
25 Castillo does not specifically address DCFS in his Motion. Castillo further requests
26 / / /

27
28 [1] California Welfare and Institutions Code section 827 provides that a juvenile's case file is confidential and may only be inspected by certain enumerated individuals or those who successfully petition a dependency court for access to the file.

new discovery cut-off and trial dates so he can obtain more information based on the "newly discovered" evidence.

The County opposed the Motion on February 1, 2013. (ECF No. 39.) Castillo filed his Reply on February 6, 2013. (ECF No. 41.) That Motion is now before the Court for decision.[2]

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure take a liberal position on parties amending pleadings before trial. Fed. R. Civ. P. 15(a). But once a district court issues a scheduling and case management order, Rule 15(a)'s generous standard gives way to the more stringent good-cause standard under Rule 16(b)(4). *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).

In applying the good-cause standard, a court "primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (internal quotation marks omitted).

## III. DISCUSSION

Castillo argues that he should be allowed to file the Proposed First Amended Complaint naming Mathews, Macias, and Rodriguez-Vasquez as defendants based on the "newly discovered" evidence, that is, the second packet of documents. He contends that because the first packet was "heavily redacted," he was not able to identify the three individuals until late December, well after the Court's October 29, 2012 amendment cut-off date.

But the County claims that Castillo knew the identity of Macias and Rodriguez-Vasquez after receiving the first packet. The County's attorney, Patricia Ellyatt, filed under seal what purports to be the contents of both packets sent to Castillo. (Ellyatt

---

[2] The Court deems this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

1  Decl. Exs. B, D.)  The County correctly points out that the names of Macias and
2  Rodriguez-Vasquez appear repeatedly in the first packet, along with emails between
3  Castillo himself and Rodriguez-Vasquez.  (Ellyatt Decl. ¶ 3, Ex. B.)
4        Though Castillo claims he suddenly learned of the identities of Macias,
5  Rodriguez-Vasquez, and Mathews following receipt of the second packet of
6  documents from the dependency court, he does not submit any evidence to back up his
7  assertion.  Rather, he expects the Court to assume that since he received some
8  documents, whatever they actually said, after the October 29, 2012 amendment cut-off
9  date, he is entitled to file an amended complaint and receive new discovery cut-off
10 and trial dates.
11       The Court finds that Castillo has not demonstrated good cause to amend the
12 Court's Scheduling and Case Management Order.  The documents Castillo filed in
13 October 2012 in Los Angeles Superior Court in opposition to the County's motion for
14 a protective order evidence that Castillo knew of the identities of Macias, Rodriguez-
15 Vasquez, and Mathews well before the October 29, 2012 amendment cut-off date.
16       The 46-page "Delivered Service Log" repeatedly refers to both "Gesenia J.
17 Macias" and "Gloria Rodriguez-Vasquez."  Rodriguez-Vasquez's full contact
18 information appears in the documents.  Indeed, there are even emails between Castillo
19 himself and Rodriguez-Vasquez from 2011 discussing the facts giving rise to this
20 case.  Given this ocean of information that reached Castillo's shores in August 2010,
21 Castillo's claimed ignorance of the identities of Macias and Rodriguez-Vasquez until
22 December 2012 is baffling.
23       The documents produced by the hospital on September 12, 2012, in response to
24 Castillo's own subpoena also repeatedly refer to Latonya Mathews as the social
25 worker to whom the hospital made its mandatory Suspected Child Abuse Report.
26 Since Castillo submitted these documents to the state court in October 2012, his
27 argument that he suddenly learned of Mathew's identity or her participation in this
28 / / /

1  matter in December 2012 likewise falters.

2      A comparison of the documents Castillo received from the dependency court in December 2012 (Ellyatt Decl. Ex. D), to those received in August 2012 (*Id.* at Ex. B), reveals nothing earthshattering in the latter packet that was not evident in the former. And to the extent that Castillo claims that first packet was "heavily redacted," the actual state of those documents simply does not support that contention.

7      Castillo evidently knew of the three individuals' identities enough to notice their depositions on September 15, 2012—44 days before the October 29, 2012 amendment cut-off date. (Ellyatt Decl. Ex. E–G.) Castillo's own attorney declared on October 16, 2012, under penalty of perjury that these individuals were "County employees *directly involved* with Petitioner, Renee Castillo." (Oct. 16, 2012 Weissburg Decl. ¶ 9 (emphasis added).) Castillo cannot claim that the December 2012 packet suddenly revealed their identities when he already knew of them months before.

15      Castillo had a chance to rebut the County's arguments that he already knew the identities of the three individuals he seeks to substitute as defendants. Castillo instead misrepresented to the Court opposing counsel's position. He declared in his Reply that "Defendants *admit in their opposition* that Plaintiff did not know the identity of all parties, Pg. 3: lines 13–16." (Reply 3:11–12 (emphasis added).) The cited lines in the County's Opposition actually state, "The identities of two of the new defendants whom the plaintiff proposes to add *were known to the plaintiff* at the time of the filing of his Complaint and the third new defendant *was known prior to the expiration of the deadline to amend pleadings* as set by this court." (Opp'n 3:13–16 (emphasis added).) Castillo's assertion is wholly inaccurate. Such blatant misrepresentations to the Court impugn counsel's integrity and could subject Plaintiff to sanctions in this Court's discretion under Local Rule 83-7.

27      The Court also notes that while the County is already a Defendant, Castillo surreptitiously attempts to add DCFS as a defendant in the First Amended Complaint

as well. But he never discusses in his Motion why he should be permitted to do so—perhaps for good reason. Castillo cannot seriously claim he did not know the identity of the agency he repeatedly discusses and with which he had repeated contact.

## IV. CONCLUSION

For the reasons discussed above, Castillo's Motion to File a First Amended Complaint is **DENIED**. The Court's July 31, 2012 Scheduling Case Management Order remains in full force and effect.

**IT IS SO ORDERED.**

February 26, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**