**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE CASTILLO, | Case No. 2:12-cv-02760 ODW (JEMx) |
|            Plaintiff, | |
|     v. | **ORDER DENYING MOTION FOR SUMMARY JUDGMENT [56]** |
| COUNTY OF LOS ANGELES and DOES 1-10, | |
|            Defendant. | |

"Because it is my name! Because I cannot have another in my life . . . How may I live without my name? I have given you my soul; leave me my name!"

—Arthur Miller, *The Crucible*

This case is about the reputational value of an individual's name, and to what extent an individual has a right to request a hearing to contest governmentally imposed blemishes against his name.  Plaintiff Rene Castillo contends that the County of Los Angeles violated his constitutional rights by including him in a California statewide child-abuse database without providing an opportunity to challenge his

inclusion in the database.  The County responds that Castillo need not be provided an opportunity to challenge his inclusion because the database at issue is not publicly accessible, and in any event Castillo has not demonstrated any damage to his reputation.  But the County fails to establish that branding Castillo as a child abuser and included him in a non-public (but nevertheless widely accessed) database and withholding the right to contest that inclusion does not deprive Castillo of a constitutionally protected interest.   The Court therefore **DENIES** the County's Motion.[1]

## I.   BACKGROUND

On September 14, 2011, the father of Castillo's girlfriend's minor child, "M," reported Castillo to the County of Los Angeles Department of Children and Family Services ("DCFS") for allegedly abusing Child M.  (SUF 1; Weissburg Decl. Ex. 4.) Following an investigation, the DCFS determined the allegation to be "inconclusive." (SUF 3.)  An "inconclusive report" means that the investigator determined the report "not to be unfounded," but nevertheless found the evidence insufficient to determine whether child abuse or neglect has occurred.  Cal. Penal Code § 11165.12.

On November 15, 2011, Castillo received a letter from DCFS stating that he had been reported to the California Department of Justice's Child Abuse Central Index ("CACI") database, noting that DCFS's investigation was "inconclusive for sex abuse of Child M."   (Castillo Decl. ¶ 17.)   Information on the CACI database is made available to a broad range of third parties for a variety of purposes.  (*See* SUF 39.)

Also in November 2011, Castillo learned that the DCFS had also recorded the report of alleged child abuse, its record of the investigation, and its "inconclusive" determination in the State of California's Child Welfare Services Case Management System ("CWS/CMS").  (Castillo Decl. ¶ 21; *see* Mot. 5.)  The CWS/CMS database is

---

[1] The Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C. D. Cal. L. R. 7-15.

a statewide system containing child- and family-specific case files for reference by child-welfare service workers. (SUF 17.) Unlike CACI, the CWS/CMS database is confidential and generally not subject to public disclosure. (SUF 33.) Nevertheless, CWS/CMS is accessible on a limited basis by several in- and out-of-state agencies. (SGD 33.)

Shortly after learning he had been included in the CACI and CWS/CMS databases, Castillo called a DCFS appeals manager to request a due-process hearing to challenge his inclusion on those databases. (Castillo Decl. ¶ 21.) That manager informed Castillo that there was no legal mechanism to challenge his inclusion in the CACI database because Castillo was not Child M's parent, guardian, relative, or primary caregiver. (*Id.*) He also informed Castillo that there was no way to appeal his inclusion in CWS/CMS "because there is no law or statute that mandates the right to a hearing by the County." (Castillo Decl. ¶ 23.)

As of January 1, 2012 (following the passage of Assembly Bill 717), only investigations with "substantiated" findings were to be reported to the DOJ, and all reports with "inconclusive" findings were to be purged from CACI. (SUF 6.) Accordingly, Castillo received a letter in January 2012 indicating that he would be removed from the CACI database and was therefore not entitled to a hearing to dispute his inclusion in CACI. (Castillo Decl. ¶ 28.) The letter did not, however, address Castillo's inclusion on the CWS/CMS database. (*Id.*)

Castillo testifies that he is considering adopting or obtaining guardianship of his half-brother. (Castillo Decl. ¶ 31.) Based on his investigation into the requirements to obtain guardianship or adopt a child in Los Angeles County, Castillo is concerned that his inclusion on the CWS/CMS system will stymie his ability to do so.[2] (Castillo

---

[2] Castillo also testifies that "Adoptions Social Workers told [him] that [he] will not be approved to adopt a child in California, due to [his] inclusion in CWS/CMS." (Castillo Decl. ¶ 32.) The Court **SUSTAINS** the County's objection that this testimony is inadmissible hearsay.

Decl. ¶ 32.)  Castillo also believes he is at risk of no longer being eligible to continue volunteering for organizations that work with children if he remains in CWS/CMS.[3] (*Id.*)

The County's motion turns on whether its failure to provide Castillo an opportunity to contest his inclusion in CWS/CMS deprived him of his constitutional right to due process.  The State of California Department of Social Services has taken the position that it will not impose a due-process requirement upon counties to provide notice and an opportunity for a hearing before entering inconclusive allegations into the CWS/CMS database.   (SUF 9, 27.)   The Court proceeds to consider whether Castillo can establish that this position violates his due-process rights.

## II.   LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial.  *Id.*; Fed. R. Civ. P. 56(c).  Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## III.   DISCUSSION

Castillo contends that the County has violated his due-process rights guaranteed under the Fifth and Fourteenth Amendments by failing to offer any due-process

---

[3] The Court likewise **SUSTAINS** the County's hearsay objection with respect to Castillo's testimony that Dr. Fuchs "advised [Castillo] to do everything possible to clear [his] name."  (Castillo Decl. ¶ 33.)

1    mechanism for review of inconclusive child-abuse allegations and concomitant
2    inclusion on the CWS/CMS database. (Compl. ¶ 25.) Castillo also claims he suffered
3    an unconstitutional violation of his right to privacy. (*Id.*)

4         To establish a prima facie case under 42 U.S.C. § 1983, Castillo must establish
5    that (1) the conduct he complains of was committed by a person acting under color of
6    state law; and (2) that conduct violated a right secured by the Constitution and laws of
7    the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). Castillo's listing on the
8    CWS/CMS database unquestionably occurs under color of state law. *See Humphries
9    v. Cnty. of L.A.*, 554 F.3d 1170, 1184 (9th Cir. 2008) (finding that inclusion on the
10   CACI database occurs under color of state law), *rev'd on other grounds*, 131 S. Ct.
11   447 (2010). Therefore, the question here is whether Castillo's inclusion in the
12   CWS/CMS database without being afforded a right to contest his inclusion violated a
13   right secured by the Constitution and laws of the United States.

14        It is undisputed that the County did not provide Castillo an opportunity to
15   contest his inclusion in CWS/CMS. (SUF 8.) Yet the deprivation of a
16   constitutionally protected interest "is not itself unconstitutional; what is
17   unconstitutional is the deprivation of such an interest *without due process of law*."
18   *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). To prove a deprivation without due
19   process of law, Castillo must show that (1) the County has interfered with his liberty
20   or property interest, and (2) "the procedures attendant upon that deprivation were
21   constitutionally" insufficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460
22   (1989). The Court addresses each in turn.

23   **A.    Castillo's liberty or property interests**

24        An individual's liberty interest may be implicated "where a person's good
25   name, reputation, honor, or integrity is at stake because of what the government is
26   doing to him." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). But
27   procedural due-process protections apply to reputational harm only when individuals
28   suffer stigma from governmental action *plus* the alteration or extinguishment of rights

or status recognized by state law.  *Paul v. Davis*, 424 U.S. 693, 711 (1976).  This is known as the "stigma-plus" test.  *See Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006).

In *Humphries v County of Los Angeles*, the Ninth Circuit determined that inclusion in CACI without being afforded "some kind of hearing" to contest inclusion was enough to satisfy the stigma-plus test.  554 F.3d at 1201.  For the reasons that follow, the Court finds the CACI and CWS/CMS databases are sufficiently analogous to warrant a finding under *Humphries*'s reasoning that Castillo's inclusion in the CWS/CMS database without a due-process mechanism for challenging that inclusion meets the stigma-plus test.

### 1.   Stigma

The first step in the procedural due-process analysis is to determine whether Castillo suffered stigma from the County's action of listing him in CWS/CMS.  In *Humphries*, the Ninth Circuit found that "being labeled a child abuser by being placed on the CACI is unquestionably stigmatizing."  554 F.3d at 1186 (internal quotation marks omitted).  Given the common aims of the CACI and CWS/CMS databases, the same conclusion is warranted here.

The Child Abuse and Neglect Reporting Act ("CANRA"), Cal. Penal Code §§ 11164–11174.3, mandates that various statutorily enumerated individuals report instances of known or suspected child abuse and neglect either to a law-enforcement agency or to a child-welfare agency.  These agencies are then required to conduct "an active investigation," *id.* § 11169(a), which involves investigating the allegation and determining whether the incident is "substantiated, inconclusive, or unfounded."  Cal. Code Regs. tit. 11, § 901(a).  CANRA further directs that the California DOJ "shall maintain an index of all reports of child abuse and severe neglect submitted pursuant to" this process, but "only information from reports that are reported as substantiated shall be filed."  Cal. Penal Code § 11170(a)(1)–(3).

/ / /

1    The information in the CACI database is "available to a broad range of third

2    parties for a variety of purposes," including persons "making inquiries for purposes of

3    pre-employment background investigations for peace officers, child care licensing or

4    employment, adoption, or child placement."   *Humphries*, 554 F.3d at 1177.

5    Additionally, numerous state statutes mandate that licensing agencies search the CACI

6    database and conduct an additional investigation prior to granting a number of rights

7    and benefits. *Id.* at 1187–88.  CACI's sole purpose "is to alert legislatively identified

8    licensing and similar agencies of possible matches between applicants about whom

9    abuse investigations were performed where investigative dispositions other than

10   unfounded were made." (Trimarchi Decl. Ex. A., at 3.)

11   The CWS/CMS database appears to serve a similar, if more limited, function.

12   CWS/CMS "enables case workers to record and update assessments, create and

13   maintain case plans, and manage the placement of children in the appropriate foster

14   homes or facilities . . . [it] also collects data for the purposes of state, county, and

15   federal reporting . . . ." (*Id.*)  Indeed, CWS/CMS includes "a complete record of all

16   contacts and actions undertaken" with regard to an investigation of a suspected child

17   abuser, and "comprises a centralized statewide system that allows state or county child

18   welfare workers to share information on child welfare cases with legislatively

19   authorized entities." (*Id.* at 3–4.)  Thus, not only does CWS/CMS bear similarities to

20   CACI, it also goes beyond CACI's purpose merely serving as an index of names of

21   suspected child abusers by providing access to the entire record of an agency's

22   investigation.

23   The County is correct that various statutes, regulations, and blanket orders

24   significantly limit disclosure of information in the CWS/CMS database—much more

25   so than they do for CACI.  (Mot. 11–12.)  Indeed, "[e]xternal access to CWS/CMS is

26   highly restricted."   Trimarchi Decl. Ex. A., at 4.   But while the information in

27   CWS/CMS is not *publicly* available, many exceptions exist to the provisions

28   governing the confidentiality of the information.  Specifically, information included in

CWS/CMS is available—without a court order—to numerous in-state and out-of state governmental entities and agencies, including counties, child-welfare agencies, law enforcement, family law court, county counsels' offices, other states and their agencies, prosecutors, and welfare agencies.  Cal. Welf. & Inst. Code §§ 827, 10850; Cal. Penal Code § 11167.5.  California Welfare and Institutions Code section 827 alone contains sixteen enumerated exceptions to confidentiality.  For example, section 827(a)(1)(I) provides an exception for "The State Department of Social Services, to carry out its duties pursuant to . . . the Family Code to oversee and monitor child welfare agencies, children in foster care or receiving foster care assistance, and out-of-state placements."

Delving deeper into only one of these exceptions, the Court notes that California Family Code section 7901, Article 3, subsection (c) provides that "[a]ny public officer or agency . . . in receipt of [written notice of the intention to send, bring, or place a child in the receiving state] . . . may request of the sending agency . . . *and shall be entitled to receive therefrom*, supporting or additional information as it may deem necessary under the circumstances" (emphasis added).  When determining whether to proceed with an adoption, out-of-state adoption agencies would conceivably want to know—and heavily weigh—the fact that an individual seeking to adopt was accused of child abuse in another state.  Under this exception, such agencies are *entitled* to the information contained in CWS/CMS.

These exceptions for disclosure of CWS/CMS information demonstrate that even if the information is not listed in a publicly available registry like CACI, being listed in CWS/CMS with an "inconclusive" report of child abuse can still damage an individual's reputation in the eyes of various agencies.  The Court therefore concludes that this reputational damage is sufficient to constitute stigma.  *Humphries*, 554 F.3d at 1186; *Miller v. California*, 355 F.3d 1172, 1178 (9th Cir. 2004).

/ / /

/ / /

2.    *Plus*

The second inquiry in the procedural due-process analysis is whether the stigma of Castillo's inclusion in CWS/CMS has distinctly altered, extinguished, or placed a tangible burden on a right or status previously recognized by state law.  *Paul*, 424 U.S. at 711; *Humphries*, 554 F.3d at 1188.

In *Humphries*, the Ninth Circuit held that the County had placed a tangible burden on Humphries's rights in two ways: (1) by mandating that various agencies search the CACI index prior to granting a number of rights and benefits, and (2) by making information in CACI available to other identified agencies, including out-of-state agencies making foster care or adoptive decisions.  *Humphries*, 554 F.3d at 1188. It noted that the mere listing in a child abuse database is sufficient to alter an individual's right or status because child abuse databases "play[] an integral role in obtaining many rights under California law, including . . . licenses, volunteer opportunities, and even child custody."  *Humphries*, 554 F.3d at 1179.

The same reasoning is applicable here.  As addressed above, information in the CWS/CMS database, while generally confidential vis-à-vis the public, is available without a court order to a variety of state agencies, including the Department of Social Services.  Castillo has testified that he is concerned about being unable to adopt or obtain guardianship over his half-brother and to continue volunteering with children as a result of his inclusion in CWS/CMS.  (Castillo Decl. ¶¶ 31, 33–38.)  Given that his inclusion in CWS/CMS will likely have serious implications with regard to adoption and licensure in these areas, his concerns are reasonably founded.  Castillo's testimony therefore suggests that his inclusion in CWS/CMS has the potential to stigmatize him and impede his ability to obtain legal rights.

The mere fact that Castillo's determination was "inconclusive" (as opposed to "substantiated") makes no difference with regard to the violation of his rights, including the right to "informational privacy."  In California, the right to informational privacy "includes interests in precluding the dissemination or misuse of sensitive and

confidential information."  *Burt v. Cnty. of Orange*, 120 Cal. App. 4th 273, 285 (2004).   This right is implicated by inclusion in CWS/CMS, as Castillo has a reasonable expectation of privacy and the County's inclusion of Castillo in a database where the information therein is disseminated to multiple agencies amounts to a serious invasion of his privacy.

Importantly, nothing in CANRA prevents a submitting agency from enacting some procedure permitting individuals to challenge their listing or to seek to have their report deemed "unfounded."  In fact, individuals who were the subject of a child-abuse investigation that was determined to be "substantiated" are *entitled* to a due-process hearing before the agency that requested his or her inclusion in the CACI database.  Cal. Penal Code § 11169(d).  There appears to be no statutory barrier to a similar mechanism for inconclusive listings.

Viewing the evidence in a light most favorable to Castillo, the Court finds that the County simply hasn't met its burden on summary judgment to show that Castillo's individual liberty interests are not at all implicated by his inability to challenge his inclusion on the CWS/CMS database.  Thus, the Court proceeds to consider whether the procedural safeguards of Castillo's liberty interest are constitutionally insufficient to protect his rights.  *Thompson*, 490 U.S. at 460.

**B.     The government's procedural safeguards**

The Fourteenth Amendment of the United States Constitution guarantees that, "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  "[F]reedom from arbitrary adjudicative procedures is a substantive element of one's liberty," and due-process safeguards must be analyzed accordingly. *People v. Ramirez*, 25 Cal. 3d 260, 268 (1979).

Procedural due process is analyzed case-by-case based on the totality of the circumstances.  *California ex rel. Lockyer v. F.E.R.C.*, 329 F.3d 700, 711 (9th Cir. 2003).  The process provided to persons included in the CWS/CMS database must be evaluated using the three-part test set out in *Matthews v. Eldridge*, 424 U.S. 319, 335

(1976).  This test instructs courts to balance (1) the private interest affected by the official action; (2) the risk of erroneous deprivation and the probable value of additional procedural safeguards; and (3) the governmental interest, including the fiscal and administrative burdens of additional procedures.  *Id.*

### 1.    *Private Interest*

Castillo's argument in support of his private interest at stake is analogous to his argument in support of his liberty interest.  Castillo has "an interest in pursuing . . . adoption, seeking to obtain custody of . . . children, and securing the appropriate licenses for working with children without having to be subject to an additional investigation, delays, and possible denial of a benefit under California law." *Humphries*, 554 F.3d at 1193.  This element clearly weighs in favor of Castillo.  In fact, Castillo testified that he is considering pursuing several of these exact endeavors, and is concerned that his inclusion in CWS/CMS will impede his ability to do so. Castillo's interest is clearly threatened by the stigmatizing effect of a potentially erroneous listing on a child-abuse database maintained by the government.  *Id.*

### 2.    *Governmental Interest*

California has a vital interest in preventing child abuse, and the creation or maintenance of a centralized database is a responsible means for California to secure its interest.  *See Santoski v. Kramer*, 455 U.S. 745, 766 (1982); *People v. Stockton Pregnancy Control Med. Clinic*, 203 Cal. App. 3d 225, 249 (1988) (finding the goals of detecting and preventing child abuse are a "compelling" government interest). California has a justifiable interest in maintaining even "inconclusive" reports, since these reports "can reveal patterns that might not otherwise be detected and can be useful to law enforcement."  *Humphries*, 554 F.3d at 1194.  But if this system contains either incorrect or outright false information, the system's effectiveness and accuracy are lessened, and California's interest in maintaining the system is severely diminished.  *Id.*

/ / /

Granting individuals listed in CWS/CMS an additional procedure by which they can challenge their listing will no doubt impose additional administrative and fiscal burdens on California, but these burdens are generally "the sort of administrative costs that we expect our government to shoulder." *Id.* Without providing "some sort of hearing," there is a substantial risk that California will deprive innocent individuals of their "reputation-plus" by maintaining their files in CWS/CMS. *Id.* at 1195. The likely potential that intrastate and interstate agencies will come to rely on Castillo's "inconclusive" listing in the CWS/CMS database as evidence "that some sort of crime did occur," without affording him an adequate opportunity to contest that listing, is inherently unjust.

### 3.     Balancing

*Matthews* requires that the Court consider the risk of error in light of the government's and Castillo's interests. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Again, strong parallels can be drawn to the *Humphries* decision. There, as here, the state's interest was "not harmed by a system which seeks to clear those falsely accused of child abuse from the state's databases. CANRA creates too great a risk of individuals being placed on the [CWS/CMS database] who do not belong there, and then remaining on the [database] indefinitely." *Humphries*, 554 F.3d at 1200.

This Court does not intend to impede law enforcement's ability to conduct full investigations of child-abuse allegations.  Without a doubt, these difficult and intrusive investigations are a necessity in the society we live in.  But while mere maintenance of investigatory files for child-abuse allegations doesn't raise concerns under the Due Process Clause, "[w]hat California has done is not just maintain a central investigatory file, but attach legal consequences to the mere listing in such files" without allowing for the person listed to challenge his inclusion. *Id.* at 1201.

Under the totality of the circumstances, the risk of including false positives in the CWS/CMS database and distributing that information to other agencies (even if

not the public) is too great for the County to deny the individuals included in the database their constitutional right to due process.  Although the severity and extent of the legal consequences to the *Humphries* plaintiffs may have been greater, Castillo's rights and benefits are nevertheless implicated here by his inclusion in the CWS/CMS database.

The Court therefore finds that the County has not established that the procedural safeguards on Castillo's liberty interests are sufficient to protect his rights.

## IV.   CONCLUSION

Because the County of Los Angeles has failed to meet its initial burden of establishing the absence of a genuine issue of material fact for trial, the Court **DENIES** the County's motion for summary judgment.

In light of the Court's ruling, the Court **ORDERS** the parties to contact Magistrate Judge McDermott forthwith to schedule a further mediation to be held as soon as practicable.  The parties shall file a joint mediation status report no later than August 5, 2013, to apprise the Court of the scheduled mediation date.

**IT IS SO ORDERED.**

July 31, 2013

_____

**OTIS D. WRIGHT II**
**UNITED STATES DISTRICT JUDGE**

13